UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH COLVIN, JR., #192744,

    Plaintiff,

v.

HEIDI E. WASHINGTON, et al.,

    Defendants.

                                      /

Case No. 2:18-cv-00150

Hon. Paul L. Maloney
U.S. District Judge

**REPORT AND RECOMMENDATION**

**I. Introduction**

This Report and Recommendation (R&R) addresses the Defendants' motion for summary judgment. (ECF No. 64.)

State prisoner Kenneth Colvin, Jr. filed this civil rights action pursuant to 42 U.S.C. § 1983 on September 9, 2018. (ECF No. 1.) Colvin's complaint is approximately 38 pages in length. (ECF No. 1.) Colvin also attached about 137 pages of exhibits to his verified complaint. (ECF Nos. 1-1 to 1-59.) He named twenty-two defendants. Four Defendants remain. They are Corrections Officers (COs) Crisp and Russo, and Sergeants (Sgts.) Koskela and Bernhardt. Colvin alleges that Defendants retaliated against him by writing misconduct tickets in March and May 2018 while Colvin was incarcerated at the Chippewa Correctional Facility (URF). (ECF No. 1.)

Defendants argue (1) that Colvin failed to provide evidence establishing a genuine issue of material fact regarding his First Amendment retaliation claims, (2)

1

that Colvin's claims against Defendants in their official capacity are barred by the Eleventh Amendment, and (3) that Colvin's claims against Defendants in their personal capacities are barred by the doctrine of qualified immunity. (ECF No. 65.) Colvin argues that there are genuine issues of material fact as to the merits of his claim and the applicability of qualified immunity. (ECF No. 74.)

The undersigned concludes, first, that there is a genuine issue of fact as to whether Colvin established his First Amendment retaliation claims against COs Crisp and Russo. Due to those genuine issues of fact, the undersigned also concludes that Colvin's claims against Crisp and Russo are not barred by the doctrine of qualified immunity.

Second, the undersigned also concludes that no genuine issue of material fact remains with respect to Colvin's claims against Koskela and Bernhardt, and that these Defendants are also entitled to summary judgment based on the doctrine of qualified immunity.

And, third, the undersigned concludes that Colvin's official capacity claims seeking damages are barred by the Eleventh Amendment.

Therefore, the undersigned respectfully recommends that the Court (1) deny Defendants' summary judgment motion as to Colvin claims against Crisp and Russo, (2) grant summary judgment in favor of Koskela and Bernhardt, and (3) dismiss Colvin's claims against the remaining Defendants in their official capacities.

## II. Additional Relevant Procedural History

Colvin sued all defendants in their official and personal capacities. (ECF No. 1, PageID.2-5.) Colvin seeks costs, fees, damages, and declaratory and injunctive relief. (*Id.*, PageID.37.)

On February 4, 2019, this Court issued an opinion and order dismissing all but five defendants. The remaining defendants at that point were COs Burke, Crisp and Russo, and Sergeants Koskela and Bernhardt.

On July 15, 2019, these Defendants filed a motion for partial summary judgment arguing that Defendants CO Crisp and CO Burke should be dismissed due to Colvin's failure to exhaust his administrative remedies. (ECF No. 21.) On November 26, 2019, the undersigned issued a R&R recommending that this motion be granted in part, and denied in part. (ECF No. 39.) The Court adopted this recommendation. (ECF No. 45.) As a result, Burke was dismissed from the case, leaving Crisp, Russo, Koskela, and Bernhardt.

## III. Summary of Plaintiff's Allegations

Colvin's remaining claims are summarized in the table below.

| Claim Number | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1 | CO Crisp (Personal and Official Capacities) | 1st Amendment Retaliation | 03/22/2017 | Colvin was issued a misconduct ticket by CO Crisp for insolence after Colvin threatened CO Crisp with a grievance when he was denied access to the "big yard". (ECF No. 1, PageID.26.). |
| 2 | CO Russo (Personal and Official Capacities) | 1st Amendment Retaliation | 03/21/2018 | CO Russo issued Colvin a misconduct ticket for excessive noise after Colvin arrived to appeal a misconduct ticket. (ECF No.1, PageID.14.) |

3

| Claim Number | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 3 | Sgt. Koskela (Personal and Official Capacities) | 1st Amendment Retaliation | 05/29/2018 | CO Koskela issued Colvin a misconduct ticket for insolence after he interfered with another prisoner's review process. (ECF No.1, PageID.12.) Colvin interfered with the process because he believed the review to be illegitimate. (ECF No.1, PageID.12.) |
| 4 | Sgt. Bernhardt (Personal and Official Capacities) | 1st Amendment Retaliation | 05/30/2018 | CO Bernhardt issued Colvin a misconduct ticket for insolence and refusing to obey a direct order (ECF No.1-10, PageID.56.). Colvin allegedly disrupted a review process that he was mandated to attend when he didn't want to attend the review. (ECF No.1-10, PageID.55.) |

### IV. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

4

V. Analysis

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Sixth Circuit has also employed a burden-shifting approach with respect to the causation element:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

### a. CO Crisp

Defendants argue, first, that Colvin did not show that he engaged in protected conduct (the first element), and second, that CO Crisp would have engaged in the

5

same conduct in the absence of Colvin's alleged protected conduct. The undersigned disagrees with both arguments.

### i. Protected Conduct

The parties agree that Colvin threatened to file a grievance against CO Crisp.[1] (ECF No. 1, PageID.26; ECF No.65, PageID.544-545; ECF No. 65-2, PageID.561-562.) Defendants nevertheless contend that the grievance threat is not protected because, after Colvin made insolent statements toward CO Crisp, and after CO Crisp told Colvin that he would receive a misconduct ticket for that insolence, Colvin threatened to file the grievance in retaliation. (ECF No. 65, PageID.545-546.) Perhaps a trier of fact may view Colvin's threat as retaliatory and intended to harass, but at this junction there is a genuine issue of fact.

In *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008)[2], the Court held that the prisoner's comment[3] toward the corrections officer was not protected conduct because it was properly interpreted as harassment of the corrections officer. *Id.* Such statements are in violation of a legitimate prison policy to prevent insolence. *Id.*

---

[1] CO Crisp attested that, after telling Colvin that Colvin would receive a misconduct ticket for insolent behavior, Colvin responded that "I'm going to write your ass up too!" (ECF No. 65-2, PageID.562.)

[2] Defendants' supporting brief's table of authorities mistakenly uses an incorrect pin cite for *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008). (ECF No. 65, PageID.537.) The table's pin cite refers to *In re Babcock & Wilcox Co.*, 526 F.3d 824, 827 (5th Cir. 2008). Defendants, however, use the correct pin cite in the body of their brief. (ECF No. 65, PageID.874.)

[3] It was undisputed that Lockett called the MDOC correctional officer "a 'foul and corrupted bitch.'" *Id.*

However, threatening to file a grievance is protected conduct. *Maben*, 887 F.3d at 265 (citing *Pasley v. Conerly*, 345 Fed. App'x. 981, 985 (6th Cir. 2009)). A threat to file a grievance would not be protected if the basis for the grievance has no adverse impact upon the filer. *See Thaddeus–X v. Love*, 215 F.3d 1327, 264-65 (6th Cir. 2000) (finding a prisoner's threat to file a grievance against an officer for "eating waffles at a prison guard desk," which was against prison policy, "patently frivolous as the defendant's conduct had no adverse impact on [the prisoner]"). Based on Colvin's sworn statements, Colvin threatened to file a grievance because CO Crisp impermissibly denied him access to the "big yard." (ECF No. 1, PageID.26.) Therefore, Colvin's threat is protected conduct because he seeks redress for the harm of being denied access to the yard.

Colvin attested that he "simply told Defendant Crisp that he was writing his" grievance because CO Crisp "den[ied] him [access to the] big yard." (ECF No. 1, PageID.26.) Colvin says that CO Crisp then issued him a false misconduct ticket. (*Id.*) In contrast, CO Crisp swore that Colvin threatened to file a grievance against him in retaliation for CO Crisp issuing Colvin a misconduct ticket for insolence. (ECF No. 65-2, PageID.561-562.) Thus, the undersigned concludes that there is a genuine issue of fact as to the first element.

### ii. Causal Connection Argument

Defendants also argued that summary judgment is appropriate because Colvin would have been issued a misconduct ticket for his insolent behavior even in the absence of protected conduct. (ECF No. 65, PageID.551-552.) Based on the same

7

evidence cited above, the parties have presented competing narratives that are supported by evidence. On one hand, Colvin swore that he told CO Crisp that he would file a grievance against CO Crisp because CO Crisp improperly denied him access to the big yard. (ECF No. 1, PageID.26.) On the other hand, CO Crisp attested that he could not ignore Colvin's behavior under prison policy and that Colvin needed to be issued a misconduct ticket for insolence. (ECF No. 65-2, PageID.561-562.) Because the two theories are wholly inconsistent and supported by some evidence, the undersigned concludes that there is a genuine issue of fact as to the causation argument.

### b. CO Russo

Defendants argue that Colvin's claim against CO Russo should not survive summary judgment because Colvin cannot show that CO Russo's adverse action (issuing Colvin a misconduct ticket for excessive noise) was retaliatory. In addition, Defendants added that the claims should not survive summary judgment because CO Russo would have committed the same adverse action in the absence of Colvin's protected conduct (requesting a misconduct appeal form). For the following reasons, the undersigned disagrees.

### i. Causal Connection Argument

With respect to the causal connection, the undersigned concludes that there is a genuine issue of fact because the parties provided competing evidence as to why CO Russo issued Colvin a misconduct ticket for making excessive noise.

According to Colvin's verified complaint, Russo issued the misconduct ticket because, earlier in the day, Colvin requested a misconduct appeal form. (ECF No. 1, PageID.14-15.) After making the request, Colvin was directed to come to CO Russo's desk, where CO Russo yelled at Colvin and issued Colvin an allegedly false misconduct ticket. (*Id.*) Defendants' version of the facts is largely inconsistent with Colvin's. CO Russo did swear that he paged Colvin to come his desk. (ECF No. 65-5, PageID.592.) But, as Colvin arrived, he "was loudly shouting in the unit lobby." (*Id.*, PageID.593.) As a result of Colvin's yelling, CO Russo issued Colvin a misconduct ticket. (*Id.*) Due to the competing evidence provided, the undersigned concludes that there is a genuine issue of fact as to whether there is a causal connection between Colvin's protected conduct and CO Russo's adverse action.

### ii. Absence of Protected Conduct Argument

Defendants also argue that CO Russo would have taken the same action (issuing a misconduct ticket) in the absence of Colvin's alleged protected conduct (requesting a misconduct appeal form). (ECF No. 65, PageID.550-551.) In support of the argument, Defendants point to CO Russo's affidavit (ECF No. 65-5, PageID.593) and the MDOC's administrative adjudication of Colvin being guilty of making excessive noise (ECF No. ECF No. 1-20, PageID.78). In CO Russo's affidavit, he explained that he paged Colvin to come to his desk because Colvin had received a phone call. (ECF No. 65-5, PageID.592.) Russo attests that "[w]hen Prisoner Colvin finally did respond to the page, [CO Russo] heard [Colvin] out in the lobby shouting about being paged and asking who paged him." (*Id.*) CO Russo explains that, after

9

attempting to discuss why Colvin was shouting, he (Russo) "wrote the misconduct ticket for excessive noise against Prisoner Colvin because he was loudly shouting in the unit lobby." (*Id.*, PageID.593.)

In Colvin's verified complaint, he paints a different picture. Colvin stated that, after being paged, he met CO Russo at the unit desk. (ECF No. 1, PageID.14-15.) Shortly after arrival, CO Russo yelled at Colvin, asked Colvin whether Colvin intended to file a grievance, and issued Colvin a false misconduct ticket. (*Id.*) Colvin explained that, based on the context of situation, CO Russo's anger stemmed from Colvin's earlier-in-the-day request for a misconduct appeal form.

Because there are competing narratives supported by some evidence, the undersigned concludes that there is a genuine issue of material fact as to whether CO Russo would have issued the misconduct ticket in the absence of Colvin requesting a misconduct appeal form.

### c. Sgt. Koskela

With respect to the claim against Sgt. Koskela, Defendants contend, first, that Colvin failed to establish that he engaged in protected conduct and, second, that Sgt. Koskela would have committed the same adverse action even if Colvin had engaged in protected conduct. (ECF No. 65, PageID.543-546, 552.) The undersigned agrees that Colvin was not engaged in protected conduct.

In his verified complaint, Colvin states that, while he was waiting for his legal mail, he overheard another prisoner being reviewed on a misconduct ticket by Sgt. Koskela. (ECF No. 1, PageID.12.) Colvin says that the review was being conducted

10

improperly. (*Id.*) Colvin then states that he advised the prisoner on the problems with the misconduct review, which was being conducted by Sgt. Koskela. (*Id.*) Colvin says this triggered an angry response from Koskela, which led Colvin to say that he would write a grievance on Sgt. Koskela. (Id.) This portion of Colvin's complaint is shown below.

> ✱ D.) SGT. (UNKNOWN) MR. KOSKELA'S RETALIATION ACTION:
> 18. On May 29, 2018, the Plaintiff was waiting in the Annex for his legal mail, he overheard a prisoner being reviewed a misconduct report that had a violation and time of the writing of the report dated May 2, 2018, which the misconduct was reviewed beyond the 24 hour mandate --which the Plaintiff advised the prisoner, after Defendant Koskela threatened the prisoner with more days of LOP if he refused the 3 days TOP LOCK (Defendant Koskela explicitly told the prisoner that he issues 6 days of LOP for every 1 day of TOP LOCK that the prisoner refuses, which would had been 18 days of LOP sanctions) that the review was beyond the 24 hours, and thus the misconduct must be dismissed for untimely review. Immediately, Defendant Koskela responded by threatening the Plaintiff stating to him to shut the "f**k" up and mine his business for he had him placed in the hole. The Plaintiff stated, "For What?", as he had not done anything wrong. Defendant Koskela told the Plaintiff that he would think of something. Plaintiff told him that he would be writing a grievance for him threatening him and unprofessional behavior, which Defendant Koskela stated that he will see about that. See: Attached Exhibits 13a & 13b "URF:18/06/1536/17a and response" dated June 11, 2018".

(*Id.*)

Koskela's affidavit confirms that Colvin interfered with another prisoner's misconduct review. (ECF No. 65-7, PageID.600.)

Colvin argues that he engaged in protected conduct by assisting another prisoner with regard to Koskela's review of a misconduct ticket and then by saying he would write a grievance on Koskela for his angry response. (ECF No. 74, PageID.655.) Colvin stated that "[a]s a matter of law, a prisoner's assistance to other

11

prisoners in using the prison's grievances system is protected conduct." (*Id.* (citing *King v. Zamiara*, 680 F.3d, 686, 699 (6th Cir. 2012).) Colvin is partially correct in this assertion. The Sixth Circuit has noted that "courts have recognized that prisoners are entitled *to receive assistance* from jailhouse lawyers where no reasonable alternatives are present and to deny this assistance denies the constitutional right of access to the courts." *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993) (emphasis added). But, "[i]t is clear in this circuit that an inmate does not have an independent right to help other prisoners with their legal claims." *Thaddeus-X*, 175 F.3d at 395. Thus, Colvin's involvement in the misconduct review implicated the other prisoner's rights, not Colvin's rights. Furthermore, Colvin's argument misses the point. By his own admission, Colvin involved himself in Sgt. Koskela's review of a misconduct ticket with another prisoner. Colvin simply had no right to do that, regardless of whether Koskela was conducting the review incorrectly. In fact, based on Colvin's admissions, he could have been charged with "interference with the administration of rules", which is a Class II misconduct. (ECF No. 65-3, PageID.582.) Colvin essentially triggered the events with Koskela. Once Colvin was in a confrontation or argument with Koskela, Colvin mentioned an intent to file a grievance. In this context, the mere mention of an intent to file a grievance does not convert wrongful conduct by a prisoner into protected conduct on which to base a First Amendment claim. Accordingly, the undersigned concludes that Colvin has not provided evidence showing that a genuine issue of material fact exists with respect to the first element of his retaliation claim against Koskela.

### d. Sgt. Bernhardt

With respect to the claim against Sgt. Bernhardt, Defendants contend that Colvin failed to establish that his threat to file a grievance was protected conduct and that Sgt. Bernhardt would have issued a misconduct ticket to Colvin even if Colvin had engaged in protected conduct. (ECF No. 65, PageID.546-547, 553-554.) Defendants assert that the underlying basis for the grievance that Colvin threatened to file against Sgt. Bernhardt was frivolous. Consequently, the act of threatening to file a grievance is not protected conduct.

The key issue with respect to this claim is whether Colvin could be *required* to attend a misconduct ticket review. Colvin says that he was ordered to participate in the misconduct ticket review, in violation of prison policy. The parties agree that Colvin threatened to file a grievance against Sgt. Bernhardt during the misconduct review. (ECF No. 1, PageID.10-11; ECF No.65, PageID.546; ECF No. 65-8, PageID.606.) But Defendants contend that Colvin's grievance threat is not protected because the threatened grievance was meritless, and therefore frivolous. (ECF No. 65, PageID.546 (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).) Colvin says that he told Sgt. Bernhardt that "he was writing a grievance on [Sgt. Bernhardt] because [Sgt. Bernhardt] was disregarding the policy directives." (ECF No. 1, PageID.10.) Colvin points to MDOC PD 03.03.105 for the proposition that he was not required to appear for a Class II misconduct review, but Sgt. Bernhardt forced his attendance. (*Id.*, PageID.10.)

13

The MDOC Policy Directive (PD) at issue – PD 03.03.15 (eff. 04/09/2012) – mandates that a supervisory-level staff member conduct a review of a Class II misconduct ticket. Paragraph KK of that PD is shown below.

> **CLASS II MISCONDUCT**
>
> **REVIEW**
>
> KK. A supervisory level staff member other than the person who issued the Misconduct Report shall conduct a review of the Class II misconduct violation with the prisoner. The review shall be conducted within 24 hours after the report is written unless there is reasonable cause for delay as determined by the facility hearing officer at the misconduct hearing or as set forth in Paragraph III. The misconduct shall be dismissed by the hearing officer if the report is not reviewed within the required time period and the hearing officer does not determine there was reasonable cause for delay.

(ECF No. 65-3, PageID.572.)

In the opinion of the undersigned, Colvin's threat to file a grievance is meritless and frivolous (1) because Sgt. Bernhardt was required to conduct a review of the misconduct ticket, and (2) because Colvin did not have a right to decline Bernhardt's order to attend this review. (*See* ECF No. 1-15, PageID.66 (Colvin's grievance against Bernhardt, in which he states that he was improperly forced to attend the review).) Whether Colvin could refuse to participate or sign documents once he was meeting with Bernhardt for the review is another matter. Colvin did not have a right to refuse to attend and a grievance on this issue would be frivolous. Accordingly, the undersigned concludes that there is no genuine issue of fact as to this claim and Sgt. Bernhardt is entitled to summary judgment.

### VI. Qualified Immunity Argument

As an alternative argument, Defendants move to dismiss Colvin's constitutional claims by asserting qualified immunity from liability. "Under the doctrine of qualified immunity, 'government officials performing discretionary

14

functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."' *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed,

15

"this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,'" *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly

16

> established." *Anderson, supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix, supra*, at 309 (quoting *Anderson, supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

For the reasons elaborated in Section IV, genuine issues of material fact remain with regard to Colvin's First Amendment retaliation claims against COs Crisp and Russo. Moreover, the case law cited in Section IV shows that Colvin's claims, as alleged, would have been violations to his clearly established constitutional rights. Therefore, the undersigned concludes that the qualified immunity doctrine does not bar Colvin's claims against Crisp and Russo.

The undersigned also concludes that Koskela and Bernhardt are entitled to qualified immunity. First, as noted above Colvin did not allege facts making out a violation of a constitutional right. Colvin interfered in Koskela's review of a misconduct ticket with another prisoner, which triggered a confrontation with Koskela. Based on the undisputed facts surrounding this incident, Colvin was not engaged in protected conduct. In addition, Colvin did not have a right to file a grievance relating to his refusal to attend a misconduct ticket review with Sgt. Bernhardt. Second, even if Colvin was exercising his constitutional rights in these two scenarios, a reasonable officer would not have known that his conduct violated those rights. Accordingly, the undersigned concludes that Koskela and Bernhardt are entitled to qualified immunity.

## VII. Eleventh Amendment Argument

Defendants move to dismiss Colvin's official capacity claims as barred by the Eleventh Amendment. The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials. *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989). To the extent that Colvin seeks money damages, costs, and fees from Defendants in their official capacity, that part of his lawsuit is barred by sovereign immunity.[4]

---

[4] "There are three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). These exceptions are not at issue here.

18

## VIII. Conclusion

The undersigned respectfully recommends that the Court (1) deny Defendants' summary judgment motion as to Colvin claims against Crisp and Russo, (2) grant summary judgment in favor of Koskela and Bernhardt, and (3) dismiss Colvin's claims against the remaining Defendants in their official capacities.

Dated: July 28, 2021 /s/ *Maarten Vermaat*
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).